IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT REICHNER, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MCAFEE, INC., | : | No. 11-6471 |
|     Defendant. | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                                          **March 21, 2012**

Robert Reichner claims that his employer, McAfee, Inc., discriminated against him because of his age. When he accepted his offer of employment with Defendant, he agreed to arbitrate discrimination disputes. McAfee has moved to compel arbitration and to dismiss the Complaint. For the reasons that follow, the Court grants the motion.

**I.      BACKGROUND**

On October 18, 1999, Reichner began working for Network Associates, Inc. ("NAI") as a sales engineer for the Mid-Atlantic region.[1] (Compl. ¶ 22.) His written offer of employment included a provision for resolving disputes:

> In the event of any dispute or claim relating to or arising out of our employment relationship, this agreement, or the termination of our employment relationship (including, but not limited to, any claims of wrongful termination or age, sex, disability, race or other discrimination), you and NAI agree that all such disputes shall be fully, finally and exclusively resolved by binding arbitration conducted by the American Arbitration Association in California or the state you work in, and we waive our rights to have such disputes tried by a court or jury. However, we agree that this arbitration provision shall not apply to any disputes or claims relating to or arising out of the misuse or misappropriation of your or the Company's trade secrets

---

[1] NAI later became McAfee, Inc. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss and to Compel Arb. [Pl.'s Resp.] at 2.)

or proprietary information.

(Def.'s Mot. To Compel Arb. and to Dismiss the Compl. Ex. A [Employment Offer].)

Throughout the course of his employment, Reichner was a loyal and diligent employee who received numerous kudos regarding his job performance. (Compl. ¶¶ 23, 26-27, 29, 37, 41-42, 46.) As a result, he received raises and other benefits, and he received average or above average performance reviews. (*Id.* ¶ 23.) In 2007, Victor Lomet became Reichner's supervisor. (*Id.* ¶ 25.) Shortly thereafter, Lomet refused to permit Reichner to attend a necessary job training program, though Lomet allowed a younger sales engineer to attend the program. (*Id.*) Lomet also scolded Reichner for arriving late for a meeting although he did not reprimand younger employees who also arrived late. (*Id.* ¶ 30.) Lomet told Reichner that "this is a young man's game" and asked Reichner, "Are you getting too old for this job?" (*Id.* ¶ 31.) Lomet continued to deny Reichner training opportunities he offered to younger employees. (*Id.* ¶¶ 32-37.)

On November 21, 2008, McAfee placed Plaintiff on an unattainable performance improvement plan and threatened to fire him. (*Id.* ¶ 39.) Plaintiff never received a written warning about his performance, and younger employees who performed similarly to Plaintiff were not placed on any performance-correcting program. (*Id.*) Reichner voiced his concerns to human resources, stating that he believed Lomet placed him on a performance improvement plan due to his age. (*Id.* ¶ 45.) Human resources failed to properly investigate Reichner's charge. (*Id.*) Plaintiff disputes charges that his performance was lacking. (*Id.* ¶¶ 39-43.)

On January 13, 2009, human resources fired Reichner over the phone. (*Id.* ¶ 51.) Reichner argues that his termination violated the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Resources Act ("PHRA").

Reichner's response to McAfee's motion to compel arbitration includes an affidavit from Reichner. (Pl.'s Resp. Ex. 1 [Reichner Aff.].) According to Reichner, the employment offer he signed, which was drafted by NAI, was presented as a "take it or leave it" proposition; if he did not sign, he would not be hired. (Reichner Aff. ¶¶ 5, 7.) He was not offered a chance to negotiate the terms, seek legal counsel, or discuss the matter. (*Id*. ¶ 6.) After NAI changed its name to McAfee, he received a handbook from McAfee, which was silent on the issue of arbitration, and it stated, "The policies contained in this Handbook supersede all past manuals, procedures, understandings, standards or any verbal or written policies that have been distributed on behalf of McAfee Inc., any of it subsidiaries, or acquired companies." (*Id*. ¶¶ 10-12.)

## II.  STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id*. § 4. The FAA establishes the strong federal policy in favor of arbitration. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010). The presumption in favor of arbitration, however, does not apply to the issue of whether a valid agreement to arbitrate exists. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

A district court decides a motion to compel arbitration under a summary judgment standard and gives the party opposing the motion the benefit of all reasonable doubts and appropriate

inferences. *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). Before compelling arbitration, a court must determine that: (1) a valid agreement to arbitrate exists; and (2) the particular dispute falls within the scope of the agreement. *Kirleis*, 560 F.3d at 160. "Agreements to arbitrate in Pennsylvania are upheld only where it is clear that the parties have agreed to arbitrate their disputes—employment and otherwise—in a clear and unmistakable manner." *Hudyka v. Sunoco, Inc.*, 474 F. Supp. 2d 712, 716 (E.D. Pa. 2007).

### III.   DISCUSSION

#### A.   Valid Agreement to Arbitrate

Plaintiff claims that there is no valid agreement to arbitrate in this case because he did not manifest an intent to be bound. (Pl.'s Resp. at 4-5.) Plaintiff's argument relies on the handbook provided to him in 2008, which makes no reference to arbitration, as well as the one-sided nature of the agreement he signed in 1999.

The Court must determine whether a valid agreement to arbitrate exists. *See Kirleis*, 560 F.3d at 160. Under Pennsylvania law, a contract is formed if there exists: (1) a mutual manifestation of an intention to be bound; (2) terms sufficiently definite to be enforced; and (3) consideration. *Id.*

The Court is at a loss as to how Reichner can argue that he did not intend to be bound by his 1999 agreement. The fact that he worked for Defendant from 1999 until 2009 demonstrates his intent to be bound by the terms of his contract. *See Grant v. The Phila. Eagles, LLC*, Civ. A. No. 09-1222, 2009 WL 1845231, at *4 (E.D. Pa. June 24, 2009). His signature to the agreement, which includes the statement, "I accept the terms of this letter," also constitutes an acceptance of the terms. *See Evans v. Atria Assisted Living*, Civ. A. No. 01-1193, 2001 WL 34355643, at *2 (E.D. Pa. Dec. 21,

2001) (concluding that signing contract manifested agreement to be bound by arbitration provision).

Reichner also claims that the terms of the agreement are insufficiently definite to be enforced. (Pl.'s Resp. at 5-6.) He points out that the offer letter does not specify the type of arbitration required of the parties, nor does it outline who must pay the costs of the arbitration or whether attorneys' fees may be awarded to the prevailing party. Reichner, however, does not cite any law to support his contention that such terms must be specified for the agreement to be enforceable. The terms of the agreement make clear which claims must be arbitrated and that the arbitration is to be conducted by the American Arbitration Association. Furthermore, nothing in the agreement suggests that Reichner has waived any remedies available to him by arbitrating his ADEA and PHRA claims. To the contrary, McAfee has placed into the record communications indicating that if Reichner prevails in arbitration on a statute that includes a fee-shifting provision, "McAfee would be responsible for the payment of attorney's fees in accordance with the provisions of the fee shifting statute and the arbitrator's ruling." (Reply Br. in Further Supp. of Def.'s Mot. to Compel Arb. and Dismiss the Compl. [Reply Br.] Ex. A [McAfee E-mails].)

Finally, the Court is not persuaded that a 2008 handbook, which says nothing about arbitration, and whose terms are not inconsistent with Reichner's agreement to arbitrate, somehow cancels his 1999 agreement. The handbook says that it "supersedes all past manuals, procedures, understandings, standards or any verbal or written policies that have been distributed on behalf of McAfee Inc., any of its subsidiaries, or acquired companies." But this makes no reference to past offers of employment, and it is unreasonable to conclude that an employee manual retroactively voided individual employment agreements. Furthermore, the same introduction to the employee handbook upon which Reichner relies states that the "policies and procedures outlined in this

handbook . . . are not intended to confer contractual rights of any kind upon any employee, or to create contractual obligations of any kind for the Company." (Pl.'s Resp. Ex. 2 [Employee Handbook].)

The Court concludes that Reichner and McAfee have a valid agreement to arbitrate.

### B.     Unconscionability

Reichner also contends the agreement is unconscionable for a number of procedural and substantive reasons. He points out that the employment offer is a contract of adhesion that he did not draft and which involved no negotiation or opportunity for review by counsel. The contract also leaves out a number of terms, rendering the contract ambiguous and susceptible to interpretation unfavorable to Reichner. (Pl.'s Resp. at 6-8.)

Agreements to arbitrate may only be invalidated on the grounds of "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Unconscionability exists in two forms: procedural and substantive; the party contending that an agreement to arbitrate is unconscionable must establish both forms of unconscionability to render the contract unenforceable. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999); *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d Cir. 2008) (noting that party challenging arbitration agreement "has the burden to demonstrate that the agreement is *both* procedurally and substantively unconscionable"); *see also McNulty v. H&R Block*, 843 A.2d 1267, 1273 (Pa. Super. Ct. 2004) ("A determination of unconscionability requires a two-fold determination: 1) that the contractual terms are unreasonably favorable to the drafter, and 2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions.").

*1. Procedural Unconscionability*

Procedural unconscionability involves "the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Zimmer,* 523 F.3d at 228.

Reichner believes that the employment offer he accepted is a contract of adhesion. "A contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (internal quotation marks omitted). Unequal bargaining power alone, however, is insufficient to make an arbitration agreement a contract of adhesion. *Brennan v. Cigna Corp.*, 282 F. App'x 132, 136 (3d Cir. 2008) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). Although a contract of adhesion is not *per se* unconscionable, such a contract is generally procedurally unconscionable. *Alexander*, 341 F.3d at 265; *McNulty*, 843 A.2d at 1273 n.6 ("[S]imply because a dispute involves an adhesion contract, that contract is not automatically unconscionable. However, the determination that an adhesion contract is at issue, by definition fulfills the second prong of the unconscionability test.").

Plaintiff contends that he was denied the opportunity to review the letter with a lawyer and that he was not provided the opportunity to discuss with anybody the ramifications of signing the letter. (Pl.'s Resp. at 6, 8; Pl.'s Aff. ¶ 6.) The Court finds no procedural unconscionability here, even granting Reichner's argument that the parties were not on equal footing in terms of bargaining power. While the employment offer requires that modifications and amendments made to it must be in writing and signed by the employer, it does not foreclose the possibility of negotiations. Furthermore, the letter is dated October 11, 1999, but provided Reichner seven days to decide

7

whether to accept employment with NAI. (*See* Employment Offer ("If we do not hear from you by October 18, 1999, we will assume you have decided not to join NAI.").) There is no evidence in the record that Reichner was forbidden from seeking legal counsel in that seven-day period. *See Gokhberg v. Sovereign Bancorp., Inc.*, Civ. A. No. 11-1884, 2011 WL 3862155, at *3 (E.D. Pa. Sept. 1, 2011) (finding no procedural unconscionability in part because the plaintiff had several days to review the contract before starting job). Finally, the employment offer concludes with an overture to Reichner to "please contact [the Sale Engineering Manager] . . . [i]f you have any questions regarding any points in this letter." This further undercuts Reichner's procedural unconscionability argument. *See id*. (finding no procedural unconscionability in part because offer letters invited the plaintiffs to call human resources with questions).

  2.  *Substantive Unconscionability*

Substantive unconscionability refers to whether the terms of the agreement unreasonably favor the party asserting it. *Zimmer*, 523 F.3d at 228.

Reichner contends that the arbitration agreement is substantively unconscionable because it is silent on the matter of attorneys' fees and relief available to Reichner. Parties may agree to arbitrate ADEA claims. *See Gilmer*, 500 U.S. at 26-33; *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) ("This Court has squarely held that the ADEA does not preclude arbitration of claims brought under the statute."); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 218 (3d Cir. 2003) (noting that arbitration agreements in the employment context fall within the FAA's provisions). And, as noted earlier, McAfee has not limited any of Reichner's remedies by compelling arbitration. (*See* Reply Br. at 5.) Thus, Reichner will not be waiving any of the remedies available to him—including attorneys' fees—should he succeed on his claims in arbitration. There is no basis

8

in the record to conclude that the terms of the employment offer were complicated, confusing, or unreasonably favored the employer. The Court concludes that there is no substantive unconscionability here.

### C. Dismissal of Reichner's Case

The FAA directs that if a case referable to arbitration is brought in federal court, the court in which the lawsuit is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). Here, however, neither side has requested that this case be stayed. The Court will therefore dismiss Reichner's Complaint without prejudice. *See Somerset Consulting, LLC v. United Capital Lenders, LLC*, Civ. A. No. 10-3622, 2011 WL 5555622, at *13 (E.D. Pa. Nov. 15, 2011).

## IV. CONCLUSION

The parties agreed to arbitrate the dispute presently before this Court. That agreement is not unconscionable. Therefore, the Court grants McAfee's motion to compel arbitration and will close this case. An Order consistent with this Memorandum will be docketed separately.